The Richmond and Danville Railroad Co. *v.* Butler.

The main issue on the trial of an action for personal injuries against a railroad company being whether or not the plaintiff, who could neither read nor write, had for a specified sum of money released the company from all claims for damages resulting from such in-

juries and had knowingly signed, by making a cross-mark, an instrument of writing to that effect; and the evidence for the plaintiff, if true, showing that he had not so released the company, and that when he signed the paper it was not read over to him, but that he was misled by the company's servants as to its real contents, and by them made to believe it was merely a receipt for money he claimed to be due him as wages; while the evidence for the company, if true, showed that plaintiff had released the company and had signed the paper with a full knowledge of its contents; and the jury having determined this issue in the plaintiff's favor, this court, under our system constituting the jury the tribunal to decide all questions of fact, and especially to pass upon the credibility of witnesses, has no authority to set aside their verdict, after its approval by the court below, it being in all other respects fully supported by the evidence, and there being no complaint that any errors of law were committed at the trial.

October 24, 1892.                                    *Judgment affirmed.*

Before Judge VAN EPPS. City court of Atlanta. December term, 1891.

An action for damages was brought by Butler against the railroad company in May, 1890. The company pleaded accord and satisfaction by an instrument executed by the plaintiff on November 27, 1889, releasing it entirely, in consideration of $18. It also pleaded the general issue. The first verdict was in its favor, and the judgment denying a new trial was reversed by this court. See 88 *Ga.* 594. On the second trial the jury found for the plaintiff $2,358. The company moved for a new trial on the grounds that the verdict was contrary to law and evidence, and that it was excessive in amount and showed undue bias and prejudice against the defendant. The motion was overruled, and defendant excepted.

A copy of the instrument alleged to have been executed by the plaintiff, was introduced in evidence, the original being lost. It was dated November 27, 1889, signed by the plaintiff with his mark, and witnessed by Reins and Johnson. Following it (apparently as part of the same document) was a receipt to the

treasurer of the defendant for $18 in full for above account, dated December 7, 1889, and signed by the plaintiff with his mark, but not witnessed. Reins testified that he was book-keeper for the defendant at its shops, his business being to see that the shop employees, engineers and firemen were properly paid, etc.; that this paper was turned over to him, he sent for Butler, and either Johnson or witness read this paper over to him carefully, and he then touched his cross-mark to the release portion of it; that witness had nothing to do with the payment portion, that being done through the treasury department; that after plaintiff signed it and it was witnessed, it was sent to the superintendent's office; and that payment was made by Smith, the local freight agent acting as assistant treasurer. One Lee testified that Smith sent for him to witness a settlement between Butler and the company; that he read the contract over to Butler and said, "You understand this, do you, Butler? This is a settlement now releasing the company from all responsibility." Butler said, "Oh, yes." Smith told him to touch the pen, and as he did. so Smith made the cross-mark in the signature; that is the way they did all, both black and white, who could not write. Smith then paid him the money.

On this subject the plaintiff's testimony is to the following effect: For the eighteen days following the day on which he was hurt, he was confined to his bed and could not go to his work. (He was hurt on September 6, 1888.) He then resumed his position, and remained with the defendant until March, 1890. His wages were $30 to $31 per month. On the next pay-day after the injury he received only $12. He went and inquired about this of Gibbs, the master-mechanic in the shops, and the proper person for him to go to if there was anything wrong about the pay. Gibbs

told him that while he was hurt his pay was stopped, but he told him that he would get his $18 "back time"; that the rule was, when a man got hurt they stopped his wages until he got able to come back to work again. In June or July, 1889, Gibbs was transferred from Atlanta to Virginia, and was succeeded by Walden. On leaving he told plaintiff, "I left your back time with Mr. Walden." He said he left the money in the hands of Mr. Walden. Plaintiff went two or three times to Walden, who finally said, "I don't reckon I will ever be able to get that time." Plaintiff said no more to him; did not wish to worry him about it, because he said he did not think he would be able to reach it. Plaintiff then obtained a pass to Virginia where he went and saw Gibbs in July, 1889. Gibbs asked him if he had got his money, and told him he would get it. He stayed in Virginia about a week, and about two weeks after he returned he got the money as Gibbs had said. In his conversations with Gibbs and Walden nothing was said about suing the road, nor did plaintiff make any claim against the road; he took the road to be his "smokehouse," and wanted it to continue to be so. When he signed the paper nothing was said to him about suing the road or having a claim. He did not speak of suing the road, for he did not aim to sue it. When he got that "back time," that paper was thrown open to him just like they always did; they said, "Butler, touch the pen," and the $18 was put in his hand. He cannot read or write. The $18 paid him was for the lost time just after the injury. When it was paid he signed a paper just like all the time-sheets or papers he signed when he got his pay. It was not read over to him. It was not explained to him that he was signing a release to the company of all liability on account of the injury. He was in the storeroom, and Reins called him to his desk saying, "Butler, I have got your back

time." Reins had always befriended him. He had what plaintiff thought was a pay-roll spread out on his desk; he wrote on it and said, "Butler, touch the pen." Plaintiff touched it, and Reins handed him $18, and then turned and told Johnson to witness the paper. Smith did not pay him the money; he did not pay him $18 in December before he quit. He quit the defendant on March 20, 1890.

It further appeared that the plaintiff had been employed by the defendant about twenty years, three-fourths of that time as a porter in its shops. In the afternoon of September 8, 1888, returning from an errand, he was walking in the usual manner in its yard towards the shops, when the earth suddenly broke from under his feet, and he was precipitated eight or ten feet into a sewer or culvert which passed under several of the defendant's railroad tracks. There was nothing to indicate that there was anything wrong about the ground, or that any caving in had occurred. There was testimony that the sewer was at times insufficient to carry off the accumulated rainfall; and that in March or May, 1888, a hole appeared in the ground at the same place where plaintiff fell through, which hole was filled with clinkers or cinders, but no examination seems to have been made to ascertain the cause of the giving way of the ground, or whether the sewer was broken. The plaintiff's fall produced a permanent spinal injury which has lessened his capacity to labor three-fourths. It also caused frequent passages of blood from his bladder, kidneys and bowels. He lost twelve or more pounds in weight. He has suffered pain constantly since the fall. Before that he was strong and healthy, and was about fifty years old in 1888. He was rendered unable to do lifting or heavy manual labor; and when he returned to work for the defendant, other men were furnished to

do such heavy work as he had been accustomed to perform.

Barrow & Jackson, for plaintiff in error.

F. R. & J. G. Walker, contra.